Wanda M. Wallace v. Commissioner. Carl Wallace v. Commissioner.
Wallace v. Commissioner
Docket Nos. 8980, 8981.
United States Tax Court
1947 Tax Ct. Memo LEXIS 273; 6 T.C.M. (CCH) 300; T.C.M. (RIA) 47066; March 13, 1947
*273 L. E. Elliott, Esq., for the petitioner. D. Louis Bergeron, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: In these cases, duly consolidated, we have for consideration deficiencies in income taxes determined against each of the petitioners in the amount of $943.84 for the calendar year 1940 and in the amount of $1,567.50 for the period ended October 31, 1941. The only question presented is whether a dividend of $5,500 is taxable in 1940, or in 1941. All facts have been stipulated and we adopt the stipulation by reference and find the facts therein agreed upon. Omitting formal parts, the stipulation states as follows: [The Facts] I Carl and Wanda M. Wallace, husband and wife, hereinafter referred to as the petitioners, are residents of Dallas, within the Second Collection District of Texas, where they filed separate individual income tax returns under the community property laws of the State of Texas. II Carl Wallace was the head of the community. For a number of years he was and still is engaged in the plumbing business. He keeps his books and files his returns on the cash receipts and disbursements basis of accounting. III Southland *274 Supply Co., Inc. is a corporation organized on March 15, 1928, under the laws of the State of Texas to engage in the plumbing supply business. Prior to 1936, petitioner was the owner of 988 of the 1000 shares of the stock of Southland Supply Co., Inc. of the par value of $100.00 per share, with a total capitalization of $100,000.00. Sometimes in 1936 petitioner entered into a contract for the sale of the said stock to B. V. Henegar and Henry I. Warden who executed a note in the amount of $121,879.13. The stock of the corporation was held as collateral by the petitioner. In addition to other conditions not herein material, when the amount of the note had been paid out of the profits of the corporation, petitioner was to receive back 55% of the stock sold to Henegar and Warden as a bonus. On December 31, 1940, the Board of Directors of Southland Supply Co., Inc. passed a resolution, a copy of which is hereto attached marked Exhibit A-1 and made a part hereof. On that date the surplus account disclosed a balance of $24,006.40. The journal entries of that date recording the declaration of the above-mentioned dividend of $10,000.00 were as follows: "Debit Surplus
$10,000.00
Credit Accounts Receiv-
able
$10,000.00
Debit General Ledger *
$10,000.00
Credit Vouchers Payable
$10,000.00
Henegar
$5,000.00 (* General Ledger)
Warden
5,000.00 (* General Ledger)"
*275 On January 15, 1941, Henegar and Warden negotiated counter checks payable to petitioner in the amounts of $5,000.00 at the Republic National Bank of Dallas. On January 21, 1941, Southland Supply Co., Inc. issued two checks in payment of the dividend previously referred to above as follows: Check
Check
Voucher
Dated
Number
Number
Payee
Amount
1-21-41
3599
12-253
B. V. Henegar
$5,000.00
1-21-41
3600
12-254
Henry I. Warden
5,000.00
The above-mentioned checks were properly endorsed and cancelled on January 21, 1941 at the Republic National Bank of Dallas, the bank on which drawn and the counter checks made payable to petitioner, previously referred to above were honored by the said bank. On the books of the corporation the charge made was to Vouchers Payable and the credit to Cash. Petitioners did not report any part of said dividend of $10,000 in either their 1940 or their 1941 returns. IV On March 15, 1941 petitioners filed separate individual income and defense tax returns, Form 1040, for the calendar year 1940, in which they reported one-half of the community net income of $48,938.88 or $24,469.44 and on which they each computed income *276 and defense taxes of $4,041.43. After an examination petitioners consented to an increase in the net income of $584.14 to $49,523.02 or $24,761.51 each as well as to a deficiency in tax of $99.91 each, which amounts were subsequently assessed. V On June 10, 1941 the Commissioner of Internal Revenue granted permission to the petitioners to henceforth file their returns on a fiscal year basis provided, however, that the returns for the first period, i.e., January 1 to October 31, 1941, be filed on or before January 15, 1942. On January 15, 1942 petitioners filed separate individual income tax returns, Form 1040, for the calendar year 1941 in which they reported one-half of the community net income or $33,355.45 and on which each computed an income tax of $11,470.94. On May 5, 1942 petitioners also filed separate individual income tax returns, Form 1040, for the period January 1 to October 31, 1941 in which they reported one-half of the community net income of $67,524.11 or $33,762.06 and on which they each computed a tax of $11,766.82, an additional amount of $295.88 from the amount originally reported in the return filed January 15, 1942. After an examination petitioners consented *277 to an increase in the net income of $729.31 to $68,253.42 or $34,126.71 each as well as to a deficiency in tax of $1,268.34 each, which amounts were subsequently assessed. VI Copies of the statutory notices of deficiencies in tax for the calendar year 1940 and for the period in 1941 are attached to the respective petitions, marked Exhibit A, and by reference are made a part hereof. VII For the purpose of these proceedings and only for this purpose, it is agreed that the effect of said contract by and between Henegar and Warden and petitioner was to leave petitioner as the owner of 55% of the capital stock of Southland Supply Co., Inc., though recorded in the name of Henegar and Warden. VIII At the time of the payment of the $10,000.00 to petitioner on January 21, 1941, the books disclosed that Henegar and Warden were indebted to petitioner for the stock and the note executed for the amount of the indebtedness previously referred to above in the amount of $90,379.13. MINUTES OF SPECIAL MEETING OF BOARD OF DIRECTORS OF SOUTHLAND SUPPLY CO., INC. HELD TUESDAY, DECEMBER 31, 1940 AT THE OFFICE OF THE COMPANY, 2400 S. HARWOOD ST., DALLAS, TEXAS. At the request of the President, *278 the Secretary called a special meeting of the Board of Directors of the Southland Supply Company, Inc. Upon roll being called there were present: H. I. Warden, B. V. Henegar and D. M. Henegar, which constituted a quorum. The special meeting was called for the purpose of declaring a dividend to all stockholders as of record December 31, 1940 in view of the Company's earnings for the year 1940. Motion was made, seconded and carried that the Company declare a 10% dividend on Capital Stock to all stockholders as of record December 31, 1940, and was so ordered by the President. There being no further business it was moved, seconded, that the meeting be adjourned and was so ordered by the President. [Sgd.] D. M. Henegar Secretary [Sgd.] H. I. Warden President [Opinion] When, under the facts above, was the $5,500 dividend taxable? The petitioners contend that it was taxable in 1940 because in that year the $5,500 dividend in question was, they argue, made unqualifiedly subject to their demand; while the respondent's view is, primarily under , that the dividend is taxable when paid in 1941. It will be noted at the outset *279 that, though the stock stood in the names of Henegar and Warden, for the purposes of these cases, the petitioners are by both parties treated as "for all intents and purposes" owners of 55 per cent of the stock, and therefore entitled to $5,500 of the $10,000 dividend. We shall therefore treat the matter as if the petitioners stood in the same position as Henegar and Warden, as the parties affirmatively do; therefore, that if the dividend was unqualifiedly available to Henegar and Warden in 1940, it was so made unqualifiedly available to the petitioners. The parties are in agreement that under Treasury regulations: A taxable distribution made by a corporation to its shareholders shall be included in the gross income of the distributees when the cash or other property is unqualifiedly made subject to their demands. Therefore, our only problem here is whether the facts disclose that the dividend was made unqualifiedly subject to petitioners' demands in 1940. In our opinion they were. There was not mere declaration of dividend and entry on the books as dividend payable, as the respondent views the matter. In addition, on December 31, 1940, the general ledger showed "Credit Vouchers *280 Payable" to Henegar and Warden in the amount of $5,000 each. Warden was president of the corporation, and Henegar was secretary. When, on January 21, 1941, there was actual payment, "Vouchers Payable" was debited, showing that the entries therein on December 31 were proper to effect the credit to Warden and Henegar and therefore (on the theory of both parties that petitioners are in the same position as Warden and Henegar) to the petitioners. Under such facts, there was constructive receipt by the petitioners, and delay until January in actual receipt is not controlling. The Avery case, supra, primarily relied on by respondent, is not to the contrary, for its recognizes that there can be constructive receipt of a dividend, but points out that there was in that case no unqualified subjection of the moneys to the demand of the stockholder, as was indicated by the practice of the company in paying dividends: "* * * they * * * never left the treasurer's office or went to the mailing department until the afternoon of the last day of the month. They were mailed on the last day of the month so as to be in the stockholder's hands on the first business day of the following month. The practice *281 was without exception that no stockholder, whether employee or officer, should receive his check before the first business day of the month following the month in which the dividend was made payable." The Court adds that the petitioner there did not expect payment on December 31st and that the practice shows that the company had no intention to make actual payment on that day. Such special facts, not present here, eliminate that case as authority; and the facts here place the funds within the "unrestricted right of the stockholders to demand payment," to use the phrase from the Avery case. The distinction in the peculiar facts in the Avery case is indicated in , to the effect that a dividend declared and made payable in one year is then taxable "unless the intention of the corporation is made manifest, as by the practice of mailing the checks on the last day of the year, to withhold actual payment until the subsequent year." The instant case, in our view, is in principle analogous to , where it was held that a dividend credited to the stockholder, with notice given *282 to him thereof, was constructively received. The court cited the Avery case, therefore obviously, and we think rightly, considered it not contra. This case, like the Saenger case, is not one of checks given and not cashed because of practice, but of unqualified credit. That the petitioners were on a cash basis of accounting does not require a different conclusion. ; . We conclude and hold that the petitioners were taxable in 1940 upon the $5,500 dividend. Decision will be entered under Rule 50.